# Exhibit 1
Collective Settlement Agreement

# COLLECTIVE SETTLEMENT AGREEMENT

*Jonathan Culver et al v. ATM Response, Inc. et al*
No. 1:20-CV-03551-TWT (N.D. Georgia)

This Settlement Agreement reflects the settlement terms between Defendants ATM Response, Inc. and Clayton Braswell ("Defendants") and the Plaintiffs in the collective action of <u>Jonathan Culver et. al. v. ATM Response, Inc. et al</u>, No. 1:20-CV-03551-TWT (N.D. Georgia) (the "Lawsuit"). Plaintiffs, as defined below, and ATM Response, Inc. are hereinafter referred to as the "Parties."

1) **<u>Nature of the Cause of Action.</u>** Plaintiffs allege in this Lawsuit that Defendants misclassified them as independent contractors and, during the period of that misclassification, failed to pay them overtime at one-and-one-half their regular rate when they worked over forty (40) hours per workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"). Plaintiff Joshua Lawson additionally alleges that Defendants retaliated against him because of his assertion of his rights in this Lawsuit.

2) **<u>Scope of the Settlement.</u>** The date of the execution of this Settlement Agreement is referred to herein as the "Effective Date." This Settlement Agreement includes all named and "Opt-In" Plaintiffs who have filed consent forms with the Court, and who have not been dismissed prior to the Effective Date (collectively, "Plaintiffs"), whose signatories are Jonathan Culver, Thomas Heape, Roy Thomas Eidson, Anastasia Cox, Cordelia Gober, and Joshua Lawson (the "Named Plaintiffs"), acting in their capacity as the collective representatives. All "Opt-in" Plaintiffs have authorized and consented in writing to the Named Plaintiffs making decisions in this litigation on their behalf.

3) **<u>Court Approval</u>.** Within ten (10) business days after the execution of this agreement by the Parties' counsel, the Parties shall file a joint motion for approval of the settlement. The joint motion shall contemplate a stipulation of dismissal of the action once all settlement payments are made, and a proposed Order.

4) **<u>Settlement Amount.</u>** Defendants agree to pay a total settlement amount of $265,000.00, inclusive of payments to Plaintiffs and attorneys' fees and litigation costs (the "Total Settlement Amount"). Defendants agree the

1

Settlement Amount of $265,000.00 is a compromise due to value of Plaintiffs' claims. This total Settlement Amount includes:

(a) $180,353.84 in payment of overtime and liquidated damages to Plaintiffs, the amount to each individual Plaintiff based upon the individual's regular rate and overtime hours worked during the statutory period while classified as an independent contractor. The amount will be paid half as wages, for which a W-2 shall issue and appropriate taxes will be withheld, and half as liquidated damages, for which a 1099 shall issue.

(b) $5,000.00 in additional payment to Culver for his off the clock overtime claims. This amount will be paid half as wages, for which a W-2 shall issue and appropriate taxes will be withheld, and half as liquidated damages, for which a 1099 shall issue.

(c) $12,500.00 in additional payment to Lawson for his retaliation claim. This amount will be paid as non-wages and a 1099 shall issue.

(d) $67,146.16 in attorneys' fees and costs, payable to Scott Employment Law, P.C., for which a 1099 shall issue.

The payment in Subparagraph 4(a) exceeds the total amount of overtime the Parties calculate is due to Plaintiffs and was agreed upon before the amounts in Subparagraphs 4(b)–(d) were negotiated.

5) **Allocation of the Settlement Amount.** The individual allocation of the payments to the Plaintiffs described in Paragraph 4(a) is attached hereto as "Exhibit A."

6) **No Confidentiality.** This Agreement is not confidential, and nothing in this Agreement shall prevent Plaintiffs from discussing their FLSA claims or the bases therefore.

7) **Scope of the Release.** Plaintiffs release all wage-and-hour claims, including FLSA claims and any claims under Georgia law, based on allegations of unpaid overtime during the period they were classified as independent contractors. They do not release any other claims, and there is no general release of claims. Culver specifically releases his off the clock claims. Lawson releases his retaliation claims.

8) **Disbursement of the Settlement Amount.** Defendant will pay Plaintiffs' individual allocations through Defendant's payroll service provider. Within ninety (90) days of Court Approval of the Settlement Agreement, Defendant shall cause the payments in Paragraph 4(a) to be made to Plaintiffs. Specifically, Defendant's payroll service provider shall issue two settlement checks to each Plaintiff. The first check will constitute one-half of the settlement payment and will be reported as wages for tax purposes, with each Plaintiff receiving an IRS Form W-2 for this portion of the settlement payment. The second check will cover the remaining half of the settlement payment and shall constitute payment for liquidated damages, with each Plaintiff receiving an IRS Form 1099 for this portion of the settlement payment.

   Within six (6) months of Court Approval, Defendant shall cause to be paid the amounts in Subparagraphs (4)(b), (4)(c), and (4)(d) above, with the tax treatment indicated in such Subparagraphs.

   Checks not negotiated (cashed) within 120 calendar days after issuance of the checks will be void. The money from all checks that remain uncashed after the void date shall be donated to the *cy pres* beneficiary identified in Paragraph 10. Should any check become damaged in transit, or lost in the mail, Defendant shall cause it to be re-issued if notified within 120 calendar days after issuance.

9) **Reissued Checks.** Checks reissued pursuant to Paragraph 8 that are not negotiated (cashed) within 120 calendar days of reissuance will be void, and the money from all such checks shall be reallocated to the *cy pres* beneficiary identified in Paragraph 10.

10) **Cy Pres**. If any settlement checks remain uncashed after 120 days of issuance or reissuance and are therefore void, the Parties agree to donate this amount to a legal aid organization selected by Defendants' counsel.

11) **Court Approval.** This Agreement is subject to Court Approval and is not final until Court Approval is granted. In the event that (a) the Court does not approve the Settlement as provided herein; or (b) the Settlement does not become final for any other reason, the Parties agree to engage in follow-up negotiations with the intent of resolving the Court's concerns that precluded approval, and if feasible, to resubmit the Settlement for approval within thirty (30) days. If the Settlement is not approved as resubmitted or if the Parties are not able to reach another agreement, any Party may void this Agreement

within ten (10) business days of notice of either event, and litigation of the Action will resume.

12) **Retention of Jurisdiction, and Dismissal of the Lawsuit.** The Parties' proposed Order shall request that the Court approve the Settlement, enter judgment, and retain jurisdiction over the Lawsuit to ensure compliance with this Agreement. Within five (5) business days of the receipt of all payments due pursuant to this Agreement, the Parties will file a stipulation of dismissal with prejudice, pursuant to Federal Rule of Civil Procedure 41.

13) **Complete Agreement.** Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement, and that they are competent to execute this Agreement and accept full responsibility therefore. This Agreement: contains the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties; constitutes the entire understanding and agreement between the Parties; and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

14) **Enforcement of Settlement Agreement and Governing Law.** This Agreement shall be governed by Georgia law. The Parties also hereby submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of the terms of this Agreement.

15) **Calculation of Time Periods.** All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or legal holiday, in which event the period shall run until the end of the next business day.

16) **Agreement Form and Construction.**

   (a) The Parties agree that the terms and conditions of this Agreement are the result of lengthy, carefully considered, arm's-length negotiations between the Parties, and that this Agreement shall not be construed in

favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

(b) This Agreement may not be changed, altered, or modified, except in writing and signed by counsel for all Parties, and, if material, approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by counsel for the Parties.

(c) To the extent necessary to effectuate the terms of this Agreement, including without limitation the meaning of any defined terms, the singular shall be construed as the plural and the plural construed as the singular, except where a plain reading of the language indicates that the use of the singular or plural is intended.

(d) This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

(e) This Agreement may be executed in electronic counterparts, including via DocuSign, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon the Effective Date as to all Parties subject to the terms and conditions provided herein.

(f) This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide for a complete resolution of the released claims.

IN WITNESS WHEREOF, the Parties each voluntarily and without coercion have caused this Agreement to be signed as of the respective dates written below.

**NAMED PLAINTIFFS AND SETTLEMENT COLLECTIVE REPRESENTATIVES, ON BEHALF OF THEMSELVES AND OPT-IN PLAINTIFFS**

_____
**JONATHAN CULVER**

**Date Signed by Culver:** 6/29/2021

_____
**THOMAS HEAPE**

**Date Signed by Heape:** 6/30/2021

_____
**ROY THOMAS EIDSON**

**Date Signed by Eidson:** 6/30/2021

_____
**ANASTASIA COX**

**Date Signed by Cox:** 6/29/2021

_____
**CORDELIA GOBER**

**Date Signed by Gober:** 6/30/2021

_____
JOSHUA LAWSON

Date Signed by Lawson: 6/30/2021

DEFENDANT ATM RESPONSE, INC.

By: _____
Clayton Braswell, Owner

Date Signed by ATM Response, Inc.: 7-7-2021

_____
CLAYTON BRASWELL

Date Signed by Clayton Braswell: 7-7-2021

# **Exhibit A**

| Employee Name | Totals |
|---|---|
| Anastasia Cox | $4,524.39 |
| Brandon Bryant | $3,827.38 |
| Charles Jamerson | $99.59 |
| Christopher West | $2,540.84 |
| Cordelia Gober | $2,819.13 |
| Daniel Menchion | $2,030.75 |
| Didymus Kimbrough | $228.72 |
| Donald Smith | $127.98 |
| Donel Harris | $12,164.50 |
| Erin Payton | $3,631.98 |
| Garrett Pelt | $2,602.63 |
| Jacquelin Ross | $628.66 |
| JaQuan Britt | $2,178.77 |
| Jeanine Whitner | $5,201.24 |
| Jewel Daniels-Woolridge | $4,952.80 |
| Johnny Miller | $3,680.64 |
| Jonathan Culver | $20,137.59 |
| Joseph Hoffman | $14,551.15 |
| Joshua Lawson | $19,456.87 |
| Joshua White | $10,666.41 |
| Kevin Cumberledge | $4,313.36 |
| Landon Greene | $14,614.74 |
| Marcus Robinson | $763.23 |
| Matika Madison | $33.60 |
| Reginald Sinclair | $152.71 |
| Rex Duke | $1,049.06 |
| Roy Thomas Eidson | $4,192.58 |
| Shaquanna Cooks (Gomes) | $2,371.14 |
| Temeka Adams | $1,364.63 |
| Terron Rodgers | $1,112.37 |
| Thomas Heape | $26,397.91 |
| Titus McCleary | $416.18 |
| Tyler Gillett | $224.99 |
| William West | $7,295.30 |
|  | $180,353.84 |